Daniel, J.
Our statute against usury, declares that no person shall upon any contract, take, directly or indirectly, for loan of any money, wares or merchandize or other commodity, above the value of six dollars for the forbearance of one hundred dollars for a year, and after that rate for a greater or lesser sum, or for a longer or shorter time; and that all bonds, contracts, conveyances or assurances, to be made for payment or delivery of any money or goods so to be lent, on which a higher interest is reserved or taken, shall be void. The uniform decisions of the Courts have settled that the forbearance by a creditor, for any premium above the value allowed by the statute, of money already due, is as much within the statute as an original loan, and that *390 in contemplation of law and in fact, it is a loan. It is, I think, manifest from the pleadings and proofs in the case, that the only consideration leading to the execution of the paper of the 16th September 1837, which the appellants sought to set up as a lost deed, was the forbearance by them of the debt secured by the deed of trust of the 3d of November 1835. It is true that Mr. Hunter, who was the attorney of the plaintiffs, and who prepared the paper of the 16th September 1837, before mentioned, states in his deposition, that, in the August preceding, he visited Harper's Ferry, in company with one of the plaintiffs, Hopkins, with the view of securing the debt, the payment of which is provided for in said paper; that after calling upon David Koonce the debtor, and after a good deal of negotiation about the mode of securing the debt, it was suggested, either by his client Hopkins, or himself, to David Koonce, that as his father (the appellee Kicholas Koonce) had given a deed of trust on his property, to secure the former debt, (referring to the deed of the 3d November 1835,) perhaps he could make a similar arrangement to secure the new debt; that David Koonce saw his father, and that a good deal of negotiation took place on the subject ; that Nicholas Koonce said he would make the arrangement by giving the new deed of trust, as soon as certain arrangements were made between David Koonce and Joseph L. Russell, which it was expected would be made in a day or two, and with that view that Hopkins was detained at Harper's Ferry a day longer than he intended; that he did not understand Nicholas Koonce as refusing to give the deed, but as wishing to defer it only; and that he recollects distinctly of advising David Koonce, for whom he was counsel in other cases, that if his father did give the deed of trust, he ought, by all means, to indemnify him in some way, and although he knew David Koonce's goods were under execution, he was well satisfied he had it in his *391 power to give the indemnity otherwise. It is true also that David Koonce, in his deposition, states that in August 1837. he gave a deed of trust, (which was placed on record,) on Ins bonds, notes and book accounts, tor the benefit of his father and other creditors. He does not state, however, on account of what engagements or liabilities of his father this deed was designed to indemnify him, and the deed itself is not made an exhibit in the cause; and inasmuch as he states in a former part of his deposition, that when, on the visit of Hopkins and Hunter to Harper’s Ferry in August, to make arrangements for securing the new debt, he mentioned the subject to his father, the latter expressed an unwillingness to give a deed of trust to secure said debt, the fair inference to be drawn from his testimony, as well as from the failure of the plaintiffs to exhibit the deed executed by David Koonce, is, that said last mentioned deed was made, not for the purpose of indemnifying Nicholas Koonce against liabilities thereafter to be incurred, but those already existing. It is to be observed too, that the plaintiffs do not, in their bill, aver that David Koonce had made, either before or after the execution of the lost deed, any provision to secure his father against the undertakings on his account therein entered into, and that Nicholas Koonce, in his answer, expressly avers that he never received, and never was to receive, for executing said deed, any consideration except the indulgence to be granted him on the deed of the 3d November 1835, and the debt therein secured. In this averment he is, I think, fully sustained by the testimony of Russell, and all the leading facts of the case. And the validity of the defence set up by Nicholas Koonce in his answer, depends, in the view I have taken of the facts, simply on the solution of the question, whether a deed of trust executed by a father on his own property, to secure the debt of his son, who is in failing circumstances, made in pursuance of an un *392 derstanding between the father, his son, and the creditor, and in consideration that delay and indulgence is to be granted by the creditor in the collection of another debt of the son, for which the father had become bound, and had previously given a deed of trust, in the execution of which the creditor was about to proceed, there being no proof that the father was in anywise previously bound for the new debt, and there being no assignment thereof to him by the creditor, nor any indemnity provided the son to the father, on account of his new liability, is usurious. I cannot doubt that such a transaction falls within the meaning of the statute, and that a deed of trust thus executed, is usurious and void.
The Court I think properly overruled the motion of the plaintiffs to be permitted to retake the depositions of the witnesses who had been before examined by them in the cause; and upon the hearing of the cause, properly, for the reasons above stated, dismissed the bill as to the appellee Nicholas Koonce. I am therefore of opinion to affirm the decree, with costs to the appellee.
The other Judges concurred in the opinion of Daniel, J.
Decree affirmed.